62 F.3d 789
 Ricky RIMMER-BEY, Plaintiff-Appellant,
v.
Robert BROWN; Kenneth McGinnis; Daniel Bolden; Raymond
Palmer; Bruce Wood; Z. Tyszkiewicz; John Hawley; Robert
Wood; and Kenneth Epps, in their individual and official
capacities, Defendants-Appellees.
 No. 93-2082.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 10, 1995.
Decided Aug. 9, 1995.
 
 Daniel E. Manville (argued and briefed), Ann Arbor, MI, for Ricky Rimmer-Bey.
 Thomas A. Kulick, Asst. Atty. Gen. (argued and briefed), Office of Atty. Gen., Corrections Div., Lansing, MI, for Robert Brown, Jr., Daniel Bolden, Dennis Dyke, Z. Tyszkiewicz, John W. Hawley, Kenneth Epps, Bruce Wood and Raymond Palmer.
 Before: KRUPANSKY, NELSON, and DAUGHTREY, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 
 
 1
 Plaintiff, a prisoner in the Michigan state prison system, brought suit under 42 U.S.C. Sec. 1983 against various officials within the Michigan Department of Corrections ("MDOC"), alleging that they violated his procedural due process rights by placing him in administrative segregation without a formal reclassification hearing and violated his substantive due process rights by failing to grant him meaningful reviews of his classification status thereafter. After a trial before a magistrate judge, a judgment was returned in favor of all defendants. The plaintiff filed a motion to amend or reconsider the decision, which the trial court denied. The plaintiff filed a timely notice of appeal.
 
 
 2
 The events giving rise to plaintiff's complaint are as follows. On October 15, 1987, Bey was an inmate in the general prison population at the Jackson state prison, serving four concurrent life sentences for murder and armed robbery. On that day, Correctional Officer Robert Wright was stabbed twice in the base of the neck by two hooded inmates. State law enforcement officials conducted a criminal investigation, and MDOC officials conducted an internal prison investigation of the incident. A prisoner informant identified plaintiff as one of the parties who was involved in the planning and commission of the assault. Pursuant to prison regulations, Bey was charged with a major prison misconduct, conspiracy to commit assault and battery.[1]
 
 
 3
 Bey received a hearing before prison officials on his major misconduct charge and was found guilty of conspiracy to commit assault and battery. He was sentenced to 30 days punitive detention, which was the maximum period of punitive detention allowed under Michigan regulations. Mich.Admin.Code r. 791.5505(1). Bey served the punitive detention from November 2 to December 2, 1987, and thereafter was placed into administrative segregation. Bey charged that Michigan Prison Regulations required that, after the 30 days of punitive detention, he should have been returned to the general prison population or granted a hearing on his reclassification to administrative segregation.[2] Bey asserted that the mandatory language of the regulations created a liberty interest and that he was entitled to notice and a hearing as a condition precedent to his being placed into administrative segregation. Consequently, he commenced this action asserting that the failure to grant him a reclassification hearing violated his state-created liberty interest.
 
 
 4
 Bey's arguments are without merit for two reasons. First, Bey relies solely upon the mandatory language of Michigan prison regulations concerning placement into administrative segregation to support his claim of a liberty interest. However, the Supreme Court in Sandin v. Conner, --- U.S. ----, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), instructed that a state regulatory scheme does not create a liberty interest merely because the regulations incorporate "language of an unmistakably mandatory character." Id. at ----, 115 S.Ct. at 2298. Apart from any mandatory language in a regulation, the plaintiff must also prove that he suffered restraint which imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at ---- - ----, 115 S.Ct. at 2295. The plaintiff's placement in administrative segregation was not an atypical and significant hardship, as intended by Sandin, within the context of his life sentence.[3]
 
 
 5
 Furthermore, even if plaintiff had possessed a state-created liberty interest, he received the procedural protections required by the Due Process Clause. The procedure to classify a prisoner into administrative segregation under Michigan prison regulations requires notice of the intended reclassification and, in most cases, a hearing. Mich.Admin.Code r. 791.4405(2). However, a reclassification hearing is not required if the prisoner has already been found guilty of a major misconduct violation as the result of a hearing on that charge. Mich.Admin.Code r. 791.4405(4). Thus, the Michigan regulations provide that a second hearing, addressing a prisoner's reclassification, is not required if the prisoner has received a proper major misconduct hearing and if the subsequent reclassification was anchored in the findings of guilt that resulted from the previously conducted major misconduct hearing. Id. In this case, the plaintiff had been granted a full evidentiary hearing on the major misconduct charge against him, and the administrative segregation was based solely on that conduct. Consequently, affording the plaintiff notice and a hearing on the intended reclassification was unnecessary.[4]
 
 
 6
 Accordingly, the decision of the district court is AFFIRMED in all respects.
 
 
 
 [1]
 Bey was also charged as an accomplice to assault and battery, but prison officials dismissed that charge as duplicative
 
 
 [2]
 Unlike detention, which is imposed as a form of punishment, administrative segregation is used as a method to physically separate from the general population those prisoners who for certain reasons cannot be placed in the general prison population. Under Michigan regulations, segregation may only be imposed for the following reasons:
 (a) the prisoner demonstrates an inability to be managed with general population privileges;
 (b) the prisoner needs protection from other prisoners;
 (c) the prisoner is a serious threat to the physical safety of staff or other prisoners or to the good order of the facility;
 (d) the prisoner is an escape risk; or
 (e) the prisoner is under investigation by outside authorities for suspected felonious behavior.
 Mich.Admin.Code r. 791.4405(1).
 
 
 [3]
 In Sandin, the Supreme Court concluded that confinement in disciplinary segregation for 23 hours and 10 minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, --- U.S. at ----, 115 S.Ct. at 2295
 
 
 [4]
 Plaintiff also asserted violations of his substantive due process rights. A plaintiff asserting a substantive due process claim faces a virtually insurmountable uphill struggle. He must show that the government conduct in question was so reprehensible as to "shock the conscience" of the court. Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952); Mertik v. Blalock, 983 F.2d 1353, 1367-68 (6th Cir.1993). A review of the record in this case reveals that it contains no evidence supporting such a charge